UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ALISHA DISOTELL                          CIVIL ACTION NO. 07-cv-1872

VERSUS                                   JUDGE STAGG

WARDEN LOUISIANA CORRECTIONAL            MAGISTRATE JUDGE HORNSBY
INSTITUTE FOR WOMEN

## REPORT AND RECOMMENDATION

**Introduction**

Alisha Jean Disotell ("Petitioner") pleaded guilty to manslaughter in the Caddo Parish

District Court.  She received a sentence of 30 years, and it was affirmed on appeal.  State v.

Disotell, 882 So.2d 1183 (La. App. 2d Cir. 2004), writ denied, 896 So.2d 1000 (La. 2005).

Petitioner later filed an application for post-conviction relief in the state court.  She now

seeks federal habeas relief.  It is recommended, for the reasons set forth below, that her

petition be denied.

**Relevant Facts**

Petitioner pleaded guilty, and the factual basis (as is customary in Louisiana state

courts) was not detailed, so the only sources of facts regarding the crime are the police

reports and related documents.  The facts set forth below are taken from those documents.

They are not findings of fact, but they are the background facts available to provide context

to Petitioner's claims.

The police reports indicate that the victim, Drexell McBride, was drinking heavily at Rusty's Pub one evening in July 2002.  The victim's friend said that he was a heavy drinker and had prior relations with prostitutes.  The victim was seen in the company of Petitioner, an admitted prostitute, at Rusty's that evening.

Virginia Harris, an employee at Rusty's, told police that the victim was intoxicated that evening and in the company of a female prostitute.  Harris could not identify the woman, but she provided a physical description.  She said that the prostitute told her, as she sat in McBride's van, that she was going to drive the intoxicated man home and then take a cab, which McBride would pay for, to her home.  Harris said McBride told her that his driver was a prostitute.  Harris said that she told the woman that nothing better happen to McBride because he was like family to her.

Persons later spotted the McBride's van in a park off Lakeshore Drive near the American Legion building.  McBride was in the driver's seat, slumped over into the passenger seat.  Police and an ambulance were called, but McBride died on the way to the hospital.  Police reported that McBride's wallet was missing, and it was never found.  The coroner's report showed that McBride died from a single gunshot wound that entered the left chest, lacerated the left lung and the aorta, with the bullet lodging in a muscle of the back. The coroner reported that the victim's blood alcohol level was .291 percent.

The police who investigated the crime left Rusty's and went to the nearby Travel Lodge on Greenwood Road, which they knew was frequented by prostitutes and drug

abusers.  They asked the management if a prostitute was staying there who met the suspect's description.  The officers were directed to Room 133, where a white female fitting that description was staying with a black male.  The officers conducted a knock and talk at the room.  After much delay, the female finally opened the door and came out with a black male.  The officers saw another black male in the room.  An officer read Petitioner her <u>Miranda</u> rights.  Petitioner said she understood and agreed to speak with the officer.  He informed Petitioner that the matter was serious, and she immediately asked, "Is this about the guy in the van last night?"  She then excitedly described how the man attempted to rape her, causing her to shoot him in self-defense.  Petitioner never explained just how McBride attempted the rape, she merely said that it happened.  She also said McBride attempted to take her purse and struck her.

Petitioner told the officer that she ran from the scene of the shooting to Cotten's Grocery, where she used a pay phone to call her boyfriend, who then picked her up.  The boyfriend, who was one of the black males in the room, denied picking up Petitioner, but he added that intoxication made it difficult to remember whether he picked her up.  Petitioner allowed the officers to take from the motel room her .380 caliber Jennings by Bryco pistol and five rounds of PMC .380 caliber ammunition.

Petitioner was first placed in the Shreveport city jail, and she was later transferred to the Caddo Correctional Center.  A female inmate who was being released from CCC told officers that she was going to "drop a dime" on Petitioner.  She then told them that Petitioner

had been housed with her in the city jail and had shown her crack cocaine that she had hidden in her body.  Petitioner had been asking inmates if they had a pipe to use to smoke the drugs. Petitioner was confronted and initially denied having drugs.  As a strip search began, she handed over eight plastic baggies of crack cocaine.

A grand jury indicted Petitioner for manslaughter.  She agreed to plead guilty to that charge, and the prosecutor agreed that the drug charges would not be pursued.  Petitioner faced a maximum sentence of 40 years. Judge Jeanette Garrett imposed a lesser sentence of 30 years.

**Competence**

Petitioner argues that the trial judge erred in accepting her guilty plea because Petitioner was not sufficiently competent.  She makes a similar argument that her counsel rendered ineffective assistance by allowing her to plead guilty despite a lack of competence. The test for deciding competence to enter a guilty plea is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. U.S., 80 S.Ct. 788 (1960).  See also Godinez v. Moran, 113 S.Ct. 2680 (1993).

Petitioner points to the judge's comments at sentencing that Petitioner told the probation officer that her father was killed over a drug deal when she was 14, and Petitioner "spent some time in the state mental hospital."  She was later left to her own resources on the

street, and she became a prostitute and started using cocaine.  Tr. 137.  There was also a comment from the prosecutor that the pre-sentence investigation noted that Petitioner said she pleaded guilty "because she was tired of coming to court."  Tr. 133.  Petitioner argues that these facts should have triggered concerns about her competency.

Petitioner attached to her post-conviction application and federal petition records from her 1998 stay at the Southeast Louisiana Hospital when she was age 14.  Records indicate that Petitioner had threatened suicide and overdosed on Valium prior to her four-month admission.  She had a troubled childhood, including a police raid on her parents' home, where the parents were operating a meth lab.  She had been in a number of foster homes and had a history of substance abuse ranging from alcohol to LSD.  At the time she was admitted, she was superficially cooperative.  She appeared depressed, but had no psychotic features. She had been hospitalized at least twice before.  On admission, her two major problems were identified as depression with acting out and substance abuse.  A treatment plan was outlined, but Petitioner was hostile and non-compliant.  She ended up in restraints a number of times and needed several medications.  She seemed to be getting worse, so she was transferred to a long-term adolescent unit.

Petitioner continued to be combative, manipulative, and angry.  It was during this stay that she received notice that her father had been killed in a drug-related incident.  Petitioner's attitude improved immensely after her father's death.  She became actively involved in the equestrian program by earning merits for her participation in the treatment programs.  She

even assumed a leadership position in various treatment groups.  She was weaned off of medications.  Petitioner was at the end discharged to a small group home with the expectation of eventual reunification with her mother.  No medications were prescribed at discharge.  Tr. 269-88.

The crime at issue was committed in 2002, four years after that hospitalization. Petitioner pleaded guilty a year later, in 2003.  The transcript of the plea provides no statements by Petitioner that give reason to question her competency.  She told the judge her name and age (20), and told her that she had earned a GED.  Petitioner said that she could read and write, and she agreed that she had fully reviewed the case with her attorney, Michelle Andrepont.  Petitioner stated that she was satisfied with her attorney's work and advice, and she answered affirmatively as the judge described the elements of the crime and completed the <u>Boykin</u> process.  After a factual basis was read, the judge asked Petitioner if it was her decision to plead guilty.  Petitioner answered, "It's my decision."  Tr. 111-20.

Petitioner first presented this competency claim in a post-conviction application. Judge Scott Crichton denied the claim.  He noted the legal presumption that a defendant is competent and that a mental examination is required only when there are reasonable grounds to doubt the defendant's mental capacity.  He reviewed the mental health records summarized above but found they merely showed that Petitioner abused drugs and alcohol and suffered from depression.  The records had no diagnosis of a mental disease that would prevent her from understanding the nature of the guilty plea or cooperating with her attorney.  Tr. 426.

The state appellate court denied a supervisory writ with a two-sentence decision that stated it found no error in the trial court's ruling.  Tr. 475.  The Supreme Court of Louisiana summarily denied a writ application.  Tr. 525.

Habeas relief may not be granted on this claim unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003).

There is nothing in the record to suggest that the court or counsel should have been aware that Petitioner lacked the ability at the time she entered her plea to consult with her lawyer with a reasonable degree of rational understanding, or that Petitioner lacked a rational and factual understanding of the proceedings against her.  Petitioner had past mental health problems, as many people do, and she suffers from substance abuse, which is not uncommon among criminal defendants.  None of the mental health records suggest, however, that Petitioner suffered from a condition so severe that five years after that hospitalization (from which she was discharged successfully) she lacked the competence to understand a criminal case against her and consult with her lawyer about that case.  Not every defendant who has

experienced substance abuse or depression will require a competency hearing and the testimony of mental health professionals before a guilty plea can be entered.  Judge Garrett and attorney Andrepont are competent and careful professionals, and the undersigned is certain that they would have raised and addressed competency if they had any reasonable basis for concern.  The state court's rejection of this issue was not an unreasonable application of the Supreme Court's competency precedents, so habeas relief is not permitted.

**Ineffective Assistance of Counsel**

Petitioner also claims that her counsel was ineffective because (1) she did not question the contents of the autopsy report, (2) she allowed Petitioner to plead guilty despite a lack of evidence of guilt, and (3) counsel did not investigate Petitioner's appearance at the time of her arrest.

When a habeas petitioner makes an ineffective assistance claim in the context of a guilty plea, she must satisfy the first prong of Strickland v. Washington, 104 S.Ct. 2052 (1984) by showing that counsel's performance was deficient by reason of errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, the attorney was not functioning as the counsel guaranteed by the Sixth Amendment.  To show prejudice, the second prong, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 106 S.Ct. 366 (1985).

When a petitioner claims that counsel failed to uncover exculpatory evidence or advise her regarding a potential defense, the determination of whether the error (if there is one) prejudiced the petitioner by causing her to plead guilty rather than go to trial will depend on the likelihood that the discovery of the evidence would have led counsel to change her recommendation or whether the evidence likely would have changed the outcome of a trial. Hill, 106 S.Ct. at 370-71.

Petitioner argues that counsel should have "questioned" the autopsy report. She notes the recent investigation into the office of the late coroner, Dr. George McCormick.  There were allegations after his death that a deputy coroner signed McCormick's name to autopsies that she performed for him. The report in this case showed that the victim died from a gunshot wound and had a blood alcohol level of .291 percent.  Petitioner points out that the narrative portion of the report states that the victim was legally intoxicated but also says that the internal examination of the abdominal cavity revealed "no alcoholic smell to the gastric contents."  Petitioner argues that this is conflicting information.

Petitioner argues that counsel failed to hire experts "to prove the cause of death."  But she "does not dispute the facts in the record that a shooting occurred that killed McBride." Petitioner adds that counsel should have looked into who actually performed the autopsy. The state court did not specifically address this aspect of the Strickland claim.   Its unexplained rejection, however, was not an unreasonable application of Strickland and Hill to these facts.  It is ridiculous to suggest that counsel should have conducted further

investigation regarding the cause of death when Petitioner concedes that it was by gunshot wound.  And even if counsel could have raised questions about who performed the autopsy or whether it included conflicting statements, there is no objectively reasonable basis to believe that it would have changed counsel's advice to plead guilty or Petitioner's decision to enter that plea.

Petitioner argues that the State had "no evidence against her" to prove that she shot and killed the victim.  She points out that the employee at Rusty's who saw the victim leave the bar in an intoxicated state in the company of a prostitute could not identify the prostitute in a photo lineup. That was easily overcome, however, when Petitioner immediately admitted to police that she shot the victim.

Petitioner apparently recognizes this deficiency in her argument when she states that the "only true evidence" against her was her own incriminating statement to police.  She argues that it should have been suppressed because of her mental state.  Counsel was not ineffective for not moving to suppress the statement; a motion to suppress based on Petitioner's mental state would have been denied.  A defendant's mental condition, by itself and apart from its relation to official police coercion, is not determinative of whether a statement is voluntary.  Colorado v. Connelly, 107 S.Ct. 515 (1986).  Mental impairment or intoxication are considerations in determining the voluntariness of a statement, but only when there is also official coercion.  See Martinez v. Quarterman, 270 Fed. Appx. 277, 290 (5th Cir. 2008) (denying habeas claim of being intoxicated when giving a written confession) and

Sosa v. Dretke, 133 Fed. Appx. 114, 119 (5th Cir. 2005) (denying habeas to petitioner who made statements when he had a mental impairment but in the absence of police coercion). Accordingly, the claim that counsel should have advised Petitioner to go to trial because of lack of evidence lacks merit.

Petitioner next argues that counsel should have questioned Petitioner's physical appearance at the time of her arrest.  Petitioner says the arresting officers should have taken her to the hospital for an examination and to verify the abuse Petitioner alleged she had incurred.  Petitioner devotes less than two pages of her memorandum to this argument, and she does not articulate how counsel should have been able to influence whether police took Petitioner to the hospital at the time of her arrest.  Counsel did not become involved in the case until later.  The absence of a post-arrest examination was, by then, history.  Petitioner also does not squarely claim that she suffered any injuries at the hands of the victim.  Her boyfriend did tell police, however, that he had warned her against getting in cars with men and that she had been beaten up by a customer a few days earlier.  Tr. 21.  The state court did not specifically address this claim either, but Petitioner has not presented facts or argument that would suggest the rejection of the claim was an objectively unreasonable application of Strickland and Hill.

**Victim Impact Evidence**

A Louisiana statute set forth the contents of a victim impact statement to be considered at sentencing. Defense counsel objected that the information included in

Petitioner's pre-sentence report went beyond the scope of what was permitted by the statute. Counsel was not specific about how the information went beyond the scope, but she did say there was opinion testimony from the victim's family about the offense.  The judge overruled the objection and noted that she had received a letter from Petitioner as well as other persons, and she would consider all of the information when fixing a sentence.  The judge also heard testimony from the victim's sister about what a caring person the victim was and how much he was missed by his friends and family.  Tr. 123-32.

Petitioner argues that it violated her Eighth and Fourteenth Amendment rights when the sentencing judge considered the victim impact evidence.  The Supreme Court has held that the Eighth Amendment does not per se bar the admission of victim impact evidence in a capital sentencing hearing. "In the majority of cases ... victim impact evidence serves entirely legitimate purposes," but if such evidence "is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 111 S.Ct. 2597, 2607 (1991).  Victim impact evidence is routinely received at sentencing hearings in non-capital cases in state and federal courts. Petitioner has not pointed to any clearly established federal law decided by the Supreme Court that would prohibit the consideration of such evidence at her non-capital sentencing. See U.S. v. Horsfall, 552 F.3d 1275, 1284 (11th Cir. 2008) (noting lack of authority for argument that the Payne line of cases applied to a non-capital sentence for child pornography); Hatcher v. Duckworth, 917 F.2d 1306 (7th Cir. 1990) (unpublished) (use of

victim impact evidence at non-capital sentencing did not violate pre-<u>Payne</u> Supreme Court decisions that once barred such evidence at capital sentencing hearings); and <u>Mahan v. Cate</u>, 2009 WL 3244911, *2 (C.D. Cal. 2009) (denying habeas because "Petitioner has not shown that the Supreme Court has spoken on the use of victim impact statements, of any kind, in noncapital cases."). Absent that prerequisite for habeas relief, this claim must be denied. <u>See</u> 28 U.S.C. § 2254(d)(1)**.**

Petitioner makes a related argument that Judge Garrett's consideration of the victim impact evidence prevented her from being impartial. The Due Process Clause requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of her particular case. <u>Bracy v. Gramley</u>, 117 S.Ct. 1793, 1797 (1997). Petitioner points to the judge's statements that she wanted the family to understand that she did not control the severity of the charge that was brought by the grand jury, and her statement that she did not believe for a minute Petitioner's version of the shooting.

Judge Crichton rejected this claim when it was presented in the post-conviction application, finding that it was repetitive of the excessive sentence issue. Tr. 427. It appears that the claim is distinct from the excessive sentence claim, but it is without merit. A review of the sentencing transcript (Tr. 123-40) shows that Judge Garrett took great care and consideration in imposing the sentence, and none of her comments reflect any improper bias. Sentencing judges often chastise a defendant for her behavior or comment on the factors that influenced the sentence, but that does not disqualify the judge as impartial. Judge Garrett

stated that she had read all of the police reports, "spent many, many hours going over this case," and had lost sleep in trying to determine an appropriate sentence. She noted Petitioner's prior criminal history of prostitution, drug possession, and other minor crimes. She noted Petitioner's "tragic upbringing"and that she was only 18 when she committed the crime. She gave Petitioner credit for accepting responsibility and pleading guilty "straight up." Petitioner faced a maximum 40-year sentence, but Judge Garrett elected to impose a lesser sentence of only 30 years because of the various factors.

The record contains no support for the contention that the sentencing judge was impartial, so that claim should be denied. The same is true with respect to Petitioner's related claim that the judge failed to give sufficient consideration to mitigating factors when she fashioned a sentence. The above discussion and the transcript of the sentencing hearing shows that the judge plainly considered Petitioner's age, first-felony offender status, and misdemeanor-only record of convictions. This claim is probably not cognizable in habeas because it invokes the alleged misapplication of state sentencing laws rather than federal law. Estelle v. McGuire, 112 S.Ct. 475 (1991) ("we reemphasize that it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."). In any event, it lacks merit.

**Excessive Sentence**

Petitioner argued on direct appeal that her 30-year sentence was excessive under Article I, § 20 of the Louisiana Constitution. Tr. 158-60. Petitioner's appellate brief did not

invoke the Eighth Amendment to the U.S. Constitution or other federal law.  The appellate court affirmed the sentence.  Tr. 175-79.  Petitioner now asserts her excessive claim in this court.  She continues to base her argument on Article I, § 20 of the Louisiana Constitution.

Federal habeas relief is available only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas court does not determine whether state courts properly applied state law. Estelle, 112 S.Ct. at 480.  Even if Petitioner's arguments to this court could be construed as now invoking the Eighth Amendment or other federal law, the claim would be subject to dismissal because Petitioner did not exhaust that federal claim in the state courts.  See Baldwin v. Reese, 124 S.Ct. 1347 (2004) and Vallier v. Terrell, 2006 WL 3925066, n. 9 (W.D. La. 2006).

Finally, the claim lacks merit.  A sentence within statutory limits is almost never subject to being set aside on habeas review.  Haynes v. Butler, 825 F.2d 921-924 (5th Cir. 1987).  Recent decisions from the Supreme Court also make plain that any severity or proportionality attacks on the sentence in this case do not come close to meriting relief.  See Lockyer v. Andrade, 123 S.Ct. 1166 (2003) and Ewing v. California, 123 S.Ct. 1179 (2003).

**Cumulative Error**

Petitioner claims that cumulative error merits habeas relief. Federal habeas relief is only available for cumulative errors that are of a federal constitutional dimension. Coble v. Quarterman, 496 F.3d 430, 440 (5th Cir. 2007). Petitioner has not made a case for any error, so there is nothing to cumulate. See Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993).

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of April, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE